**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**FAITH JAMES and LARRY JAMES**                                                                  **PLAINTIFFS**

**VS.**                                                                                    **Civil Action No. 4:07-cv-137-HTW-LRA**

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY**                                                                              **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Before this court are the following motions filed by defendant State Farm Mutual Automobile Insurance Company: Motion for Summary Judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure[1] **[Docket No. 63]**; Motion to Strike Supplemental and Rebuttal Opinion of Peter J. Quave **[Docket No. 76]**; Motion to Exclude Expert Testimony of Peter J. Quave **[Docket No. 65]**; and Motion to Strike Third Motion for Leave to File Supplemental Materials **[Docket no. 101]**. Also before the court are five motions filed by plaintiff Faith James: Motion for Review of Magistrate Judge Order **[Docket no. 82]** concerning Docket Nos. 60, 78 and 58 filed under the authority of Rule 72 of the Federal Rules of Civil Procedure[2] and Rule 72.1 of the

---

[1] Fed. R. Civ. P. 56(a) provides:

A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

[2] Fed. R. Civ. P. 72(a) provides, in pertinent part:

[a] party may serve and file objections to the order within 10 days after being

Uniform District Court Rules;[3] Motion in Limine Regarding Certain Medical Records **[Docket No. 83]**; Motion for Leave to File Supplemental Materials in Opposition to Summary Judgment **[Docket no. 92]**; Motion to Supplement Opposition to Defendant's Motion for Summary Judgment **[Docket no. 96]** and Third Motion for Leave to File Supplemental Materials in Opposition to Motion for Summary Judgment **[Docket no. 99]**.

This court has jurisdiction over this case pursuant to the jurisdictional grant of Title 28 U.S.C. § 1332[4]  based on the diversity of citizenship of all parties and because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## I. Background

On February 3, 2006, Faith James and Jarvis Smith were involved in an automobile accident in Shubuta, Clarke County, Mississippi [Amended Complaint, Docket no. 15].  Plaintiff was driving a 2002 Jeep Wrangler in a northerly direction on United States Highway 45, while Smith was in a 2006 Mercury Grand Marquis. According to plaintiff, Smith failed to stop at a stop sign at the intersection of United States Highway 45 with County Road 212, and then collided with plaintiff's vehicle.  The car accident, says James, was totally the result of Smith's negligence, carelessness

---

        served with a copy . . . The district court judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

    [3] UNIF. LOC. R. 72.1 provides, in pertinent part: "A party aggrieved by a magistrate judge's ruling may appeal the ruling to the assigned district court judge. . ."

    [4] Title 28 U.S.C. § 1332 states, in pertinent part, that "(a) [t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceed the sum or value of $75,000, exclusive of interest and costs, and is between– (1) citizens of different States;. . .."

and unlawful actions. James claims she suffered a herniated disk, three fractured vertebras and other injuries. James' passenger, Teresa Lugardo, also suffered various injuries.

James had coverage under four standard automobile insurance policies issued to her and her husband Larry James by State Farm Mutual Automobile Insurance Company ("State Farm"), all of which were in effect at the time of the accident. The liability limit for Uninsured Motorist ("UM") Coverage for each policy was $10,000.00 per person, with a stacked total per person limit of $40,000.00. Each policy also included Collision Coverage with a liability limit of $100,000.00 as well as Medical Payments Coverage with a liability limit of $5,000.00 [Docket no. 63-2].

Faith and Larry James filed suit in this court on October 23, 2007, against State Farm and filed an amended complaint on February 13, 2008, alleging that State Farm had wrongfully failed to meet its obligation to pay UM coverage benefits. Plaintiffs seek UM coverage benefits in the sum of $40,000.00;[5] compensatory damages in the amount of $150,000.00; punitive damages in the amount of $20,000,000.00; and costs.

On August 29, 2008, State Farm issued four checks payable to Faith James, Larry James and Hamilton Law Firm for $10,000.00 each, totaling $40,000.00 under her UM coverage [docket no. 67-8]. Exactly two months later, on October 29, 2008, State Farm filed a motion for summary judgment.

## II. State Farm's Motion for Summary Judgement

This court shall grant summary judgment if the movant shows that there is no

---

[5]Collision and Medical Payment Coverage benefits were paid with respect to this accident prior to plaintiffs having filed suit and are not in dispute.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). In determining whether a genuine dispute exists as to any material fact, the court must consider all of the evidence in the record but refrain from making any credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The court makes all reasonable inferences in favor of the non-moving party, *Reeves*, 530 U.S. at 150; "however, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence,'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

**A. Uninsured Motorist Coverage Benefits**

State Farm has paid the full $40,000.00 of UM coverage benefits to plaintiffs. Plaintiffs do not contest this fact. State Farm, thus, is entitled to an entry of summary judgment on plaintiffs' claims for UM benefits.

**B. Punitive Damages**

Plaintiffs allege that State Farm acted in bad faith in delaying payment of Faith James' UM claim; consequently, punitive damages are warranted. With the present

matter before this court under a grant of subject matter jurisdiction owing to diversity of citizenship, this court applies the substantive law of Mississippi to this dispute. *Erie R.R. Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Mississippi law is well-settled that "punitive damages should be assessed with caution and within narrow limits as an example and warning" and that a "plaintiff has a 'heavy burden' when seeking punitive damages based on a bad faith insurance claim." *Sobley v. S. Natural Gas Co.*, 302 F.3d 325, 338 (5th Cir. 2002) (quoting *Jenkins v. Ohio Cas. Ins. Co.*, 794 So. 2d 228, 232 (Miss. 2001) (en banc) (quoting *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So. 2d 620, 622 (Miss. 1988) (en banc)). "[T]he Mississippi Supreme Court has been extremely reluctant to allow punitive damages in cases where the insurer did not deny coverage, but only disputed the amount of the claim or delayed payment." *Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1099 (Miss. 1996) (quoting *Tutor v. Ranger Ins. Co.*, 804 F.2d 1395, 1399) (reversing jury award of punitive damages where the insurance company investigated the claim, determined it to be valid, disputed the amount to be paid and delayed payment while those issues were resolved)).

     In order to recover punitive damages under Mississippi law, plaintiffs must show by clear and convincing evidence "that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. § 11-1-65(1)(a). If the insurer had a legitimate or arguable reason to deny payment of the claim, the trial judge should refuse to allow the issue of punitive damages to be tried. *Caldwell*, 686 So. 2d at 1096. Arguable reason is defined as "nothing more than an expression indicating the act or acts of the alleged tort-feasor do

not rise to heightened level of an independent tort." *Id.* Once the insurer presents an arguable reason, the burden is on the insured to demonstrate that the insurer has no arguable reason to refuse to pay the claim or to perform its contractual obligation and committed an intentional tort. *Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 271 (5th Cir. 2008); *Caldwell*, 686 So. 2d at 1097; and *Benson v. National Union Fire Ins. Co.*, 762 So. 2d 795, 799 (Miss. Ct. App. 2000).

      Plaintiffs make four arguments concerning how State Farm acted in bad faith. The first two require no analysis of whether State Farm had an arguable reason. First, plaintiffs argue that State Farm withheld payment under one coverage in order to coerce a lower settlement for claims under other coverage. Plaintiffs have presented neither evidence in the record suggesting such coercion occurred nor legal authority stating that State Farm had such a duty in this case. This contention is rejected.

      Secondly, say plaintiffs, State Farm, as the issuer of the primary policy in this case, wrongly withheld payment in violation of the terms of the policy it issued to plaintiffs. Plaintiffs also argue that State Farm issued the primary policy and thus, at least $10,000.00 from one of the policies should have paid immediately upon evaluating the claim as exceeding the $10,000.00 policy limit of each policy.[6] Plaintiff contends that failure to do so constituted violation of its own policy, a factor suggesting bad faith. *See Travelers Indem. Co. v. Wetherbee*, 368 So. 2d 829, 834 (Miss. 1979) (punitive damages instruction properly granted in part because "the plain terms of the policy requiring payment within sixty days of the proof of loss were ignored"). Plaintiffs direct

---

[6] Plaintiff does not provide within this argument the date on which she alleges such knowledge was demonstrated.

6

the court to Section III - Uninsured Motorist Vehicle – Coverages U and U1 [docket no. 63-2, pp. 14-16]. In the last subsection of that section, which plaintiffs cite, the policy states:

> **If There Is Other Coverage**
>
> 1. If uninsured motor vehicle coverage for bodily injury is available to an insured from more than one policy provided by us or any other insurer, any coverage applicable under this policy shall apply:
>    a. On a primary basis if the insured sustains bodily injury while occupying your car, or while not occupying a motor vehicle or trailer.
>    b. On an excess basis if the insured sustains bodily injury while occupying a vehicle other than your car.
>
> 2. Subject to item 1 above, if this policy and one more than other policies provide coverage for bodily injury;
>    a. On a primary basis, we are liable only for our share. Our share is that percent of the damages payable on a primary basis that the limit of liability of this policy bears to the total of all applicable uninsured motor vehicle coverage provided on a primary basis.

This court finds no support for plaintiffs' argument in the policy excerpt it cites. Plaintiffs do not cite an excerpt that holds State Farm to a certain timeline with respect to payment of uninsured motorist coverage as was the case in *Travelers*, 368 So. 2d at 834. The excerpt plaintiffs cite simply outlines liability for UM coverage when there is more than one UM coverage policy. State Farm determined it had obligations under all four UM coverage policies held by plaintiffs, and it is undisputed that State Farm paid the full amount due under all of those policies. Plaintiffs' argument has no merit. Plaintiffs have not shown that State Farm violated the terms of the policy plaintiffs held.

This court will now turn to analysis of State Farm's arguable reason. State Farm claims it did not wrongfully withhold payment on plaintiff's UM coverage claim. State Farm says the reason for the delay in payment of plaintiffs' claim for UM coverage was

7

an ongoing investigation of the claim due to issues concerning medical causation and evaluation of the claim. State Farm asserts that at all times, it acted on a good faith basis attempting to obtain all relevant information through Faith James' medical providers and through plaintiffs' counsel, but such information was never provided. Plaintiffs respond that the records were clear, and no causation issue was presented. Plaintiffs also contend that State Farm failed to conduct a prompt and adequate investigation of Faith James' medical history.

     A review of the relevant facts, as presented in the record, will assist the court in addressing plaintiffs' remaining two arguments and determine whether they demonstrate that State Farm in fact has no arguable reason and has committed an intentional tort in the processing of this claim.

     State Farm's activity log [Docket no. 63-29] shows that it learned of the accident by February 7, 2006. State Farm paid all Collision Coverage benefits during the month of February. State Farm paid Medical Payments Coverage benefits between February 20, 2006, and April 20, 2006, when total payments under the Medical Payment Coverage reached the liability limit. Upon exhaustion of Medical Payment Coverage, State Farm mailed Faith James a copy of a letter explaining that the coverage had been paid to the limit as well as a letter outlining the payments that had been made on her behalf under that coverage [Docket no. 63-16]. State Farm paid either directly to plaintiffs or on their behalf a total of $17,601.25 in Collision Coverage benefits [Docket no. 63-29]. During this time, State Farm spoke with Faith James by telephone about her medical bills.

On March 24, 2006, Gina Robertson, State Farms claim adjuster, made an entry in the activity log stating that Smith appeared to be at fault [Docket no. 63-8 and 63-29]. The entry also reflected that Robertson spoke with someone at the firm that represented Lugardo[7] and was informed that Progressive Insurance indicated to the law firm that it had a policy on the car driven by Smith at one time that was no longer in force. Robertson noted that she obtained the number to Progressive from the law firm and would follow-up with Progressive in order to confirm coverage or the lack thereof. State Farm called Progressive several times during March and April and informed Faith James by telephone that it was attempting to determine whether coverage from Progressive would apply to the accident. On April 19, 2006, Robertson reached a Progressive employee who informed State Farm that the file was in review status due to some pending coverage issues. On or before May 30, 2006, during a phone call made by Robertson, a Progressive employee told Robertson that Progressive would not provide coverage for the claim at issue. Thus, State Farm determined that UM Coverage would apply. On May 31, 2006, State Farm called Faith James and informed her that they could probably proceed to process her claim under UM Coverage.

In May, State Farm reviewed unreviewed medical documents and paid a medical records fee to Wayne General Hospital in order to obtain medical records. Faith James had been examined in the emergency room at Wayne General Hospital on February 3, 2006, the date of the accident.

---

[7]*supra*. Lugardo was Faith James' passenger during the accident.

On June 5, 2006, State Farm requested from Rush Foundation Hospital Pain Treatment Center all medical records and reports incurred to date as a result of the February 3, 2006 accident [Docket no. 67-2]. State Farm received the records on June 21, 2006 [Docket no. 63-29]. The records [Docket no. 67-2] describe Faith James' visits of May 8, 2006; May 11, 2006; and June 1, 2006, with Ken Staggs, M.D. The summary from May 8, 2006, describes injuries in the thoracic vertebrae, stating:

> [Faith James] has compression fractures at T2, T3, T5 and T11 all ensuing from a motor vehicle accident presumed February 3, 2006 as there is edema on the MRI indicating that these are new. She will need to be checked with a bone density as well.

Medical records were being requested and processed internally during June and July. On July 17, 2006, State Farm received the medical records [Docket no. 63-11] from Wayne General Hospital summarizing the findings from an examination of Faith James on February 3, 2006, subsequent to the accident. Radiologist Dr. Ronald W. Gatewood stated in his radiology report that from an "incomplete" and "limited" exam, he determined as to the thoracic spine of Faith James that "[t]here is loss of vertebral body height of multiple thoracic vertebra, approximately T7-T10. This is probably chronic." He states similarly again "loss of verterbral body height of multiple vertebra, approximately T7-T10 of uncertain age, probably old." Finally, he comments from images obtained of the thoracic spine that "[the] radiograph demonstrated mild compression of multiple mid and lower thoracic vertebral. There appear to be hypertrophic degenerative changes. However, no definite acute fracture is identified through the levels images." He found "no evidence of acute bony injury" in the thoracic spine from T5 to T12.

On the next day, July 18, 2006, State Farm claims representative Renee Powell noted [Docket no. 63-29] that the total for medical bills on file for Faith James was $6,849.58 and commented on Dr. Stagg's abovementioned findings, stating that "[i]f records do not show any more evidence of pre-existing issues, it seems that the medical records are supporting that her problems are a result of the [accident]. If this is the case, [the estimated range of claim value] is $20,000.00 to $25,000.00. . . .[The uninsured motorist] limit per person is $40,000.00. . . . and [this claim] would approach this amount if surgery is done."

Powell and Faith James communicated numerous times about James' condition and treatment and the status of James' UM coverage claim through the months of July, August, September and October of 2006 [Docket no. 63-29]. In an October 9, 2006 conversation, James informed Powell that she had fallen on concrete over twenty years ago and received treatment for her lower back at that time, but has not been treated for any back problems in recent years.

On October 27, 2006, Powell sent Dr. Staggs a letter requesting all records and charges regarding Faith James so that State Farm could determine if the thoracic compression fracture he was treating was caused by the February 3, 2006, accident, since the initial radiology report indicated that the injury was probably old [Docket no. 63-23]. Powell further requested that Dr. Staggs' explain by letter, to the extent his notes did not do so, which injuries were caused by the accident and how the accident affected pre-existing injuries. Powell sent a second request to Dr. Staggs on November 17, 2006 [Docket no. 63-29].

Attorney Joe Clay Hamilton notified Powell by letter on December 7, 2006, that he was now representing Faith James [Docket no. 63-26]. The letter stated he would forward to Powell all copies of medical bills and medical records when Faith James completed treatment. Powell responded by letter on December 11, 2006, informing that she wanted to begin evaluation of Faith James' injuries as soon as possible and requesting that Hamilton forward all medical information [Docket no. 63-27]. Powell said it was customary between her and Hamilton during their thirty-year relationship of handling claims together that once Hamilton sends a letter of representation, he sends her a package of information as he said he would [Docket no. 63-7].

State Farm processed medical records November 2006 through January 2007. State Farm records [Docket nos. 63-28, 63-29 and 63-30] reflect that March 2007 through June 2007 State Farm was waiting on information that Hamilton agreed to send concerning the claim.

On July, 12, 2007, Powell sent Hamilton all bills and records on file on Faith James and requested all Faith James' medical bills and records, including from Dr. Staggs, in order to gain clarification as to the compression fractures since the initial radiologist report indicated that they were old [Docket no. 63-29 and 63-32]. Powell also advised Hamilton that she would likely need to request prior records in order to assess Faith James's pre-accident and post-accident physical condition. Powell determined that the value of the potential UM claim on July 13, 2007, as determined from bills in their records, was $13,570.35, but if she received documentation that the compression fractures either did not exist prior or were asymptomatic prior to the accident and additional medical treatment was needed, the value of the claim could

increase to the $40,000.00 policy limit.

After multiple instances of correspondence between Powell and Hamilton in August 2007, Hamilton informed Powell that he would obtain clarification from Dr. Staggs [Docket no. 63-29].  On August 27, 2007, Hamilton wrote Powell, stating that he was sending, along with the letter, medical records of Faith James for review under UM coverage and that Faith James had as of that date incurred $44,358.46 in medical bills [Docket no. 63-34]. Hamilton further repeated Dr. Staggs' findings that Faith James' fractures were a result of the February 3, 2006, accident.  Hamilton closed the letter with a request that Powell contact him as soon as review of the medical records was complete so they could discuss settlement.  State Farm received the package of medical records from Hamilton on or before August 31, 2007 [Docket no. 63-29].

On September 12, 2007, Powell reviewed Faith James' medical records and stated [Docket no. 63-29] that "there appear[ed] to be degenerative issues that may have pre-existed" but that she was unable "to find any evidence she was symptomatic prior to [the accident]."  On that same day, Powell requested internal review of the medical records and contacted Hamilton to update him on the progress of processing the claim.

On September 20, 2007, the notes from the injury claims review [Docket no. 63-29] entered by Judi Yokum, State Farm injury claim trainer [Docket no. 63-9, p.16], state in part:

> Based on what we have received to date. . . it appears the thoracic vertebral compression fractures were pre-existing. It appears [Faith James] may have sustained soft tissue injuries superimposed over those pre-existing fractures. It is unknown at this time if the [treatments] were medically necessary because of a pre-existing condition, an acute injury,

13

or a combination thereof.

On September 25, 2007, Powell wrote Hamilton requesting medical records for a year prior to the accident from Faith James' primary care physician in order to determine whether Faith James had been treated previously for fractures and in order to determine if her fractures were related to her pre-existing condition of rheumatoid arthritis [Docket no. 63-35]. Powell subsequently wrote Hamilton that same day requesting the same information from three specific doctors whom Faith James had visited [Docket no. 63-36]. State Farm says plaintiffs did not respond to this request.

Instead, plaintiffs filed suit in this court on October 23, 2007. During the process of discovery, attorney Stephen Wilson of the Hamilton Law Firm sent State Farm's counsel a fax Wilson had received from Dr. Staggs on March 24, 2008 [Docket no. 67-6 and 67-7]. On March 14, 2008, Wilson had sent Dr. Staggs a letter referring to Dr. Stagg's notes from an October 25, 2006, office visit with Faith James in which Dr. Staggs had stated that James had thoracic vertebrae fractures and commenting "these are old fractures." Wilson's letter explained that "there is apparently a contention that Mrs. James had some condition in her thoracic spine that preceded the February 3, 2006 accident" and that State Farm needed him to "clarify via letter what [he] meant by [his] characterization of the fractures as being 'old.'" Dr. Staggs's reply, sent by fax on March 24, 2008, was a signed, handwritten note at the bottom of Wilson's March 14, 2008, letter stating, "[a]ccording to my 7/6/06 notes those fractures were recent at that time." Wilson sent this fax from Dr. Staggs to State Farm on March 28, 2008.

Four months after receiving this fax and almost two and one-half years after the accident, State Farm paid the liability limit of the four policies, issuing four checks in the

14

amount of $10,000.00 each to plaintiffs and the Hamilton Law Firm on July 29, 2008 [Docket no. 67-8]. State Farm states in its motion that it issued the checks after reviewing information obtained in the discovery phase of this case and in effort to resolve the entire case by agreement.

State Farm says its reason for the delay in payment is that it was investigating, attempting to determine whether UM coverage would apply and resolve causation issues concerning Faith James' injuries. Plaintiffs' last two arguments – that there was no significant causation issue and that State Farm failed to conduct a prompt and adequate investigation – are contingent on this court's satisfaction that State Farm met the arguable reason threshold. This court is unpersuaded by plaintiffs' arguments and finds that the record demonstrates that State Farm had an arguable reason for delay for the following reasons.

First, the fact that State Farm paid the $10,000.00 limit of UM coverage under each policy is persuasive. *See Caldwell*, 686 So. 2d at 1099 ("The fact the insurer ultimately tendered full payment of a claim is persuasive to this court.") Continuing investigation, when supported by the record, is a reasonable explanation for delay. *Id.* at 1093 (affirming summary judgment on the issue of punitive damages where, after plaintiff requested settlement and filed suit, insurer continued to investigate claim and then paid benefits).

Next, in order to recover punitive damages against an insurance company for bad-faith refusal to pay a claim, or refusal to honor an obligation under an insurance policy, the insured must first demonstrate that the claim or obligation was in fact owed. *Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 271 (5th Cir. 2008). State Farm

had no obligation to pay until it determined that a particularly coverage applied. The record demonstrates that a question was raised as to whether Progressive would supply coverage for Smith's vehicle and that State Farm communicated with both Progressive and the plaintiffs about this issue in a reasonable manner.

State Farm communicated with Progressive numerous times, seeking the status of a determination. Progressive was still reviewing the claim in late April. State Farm learned of Progressive's decision to deny coverage in late May and promptly notified Faith James the next day that it would begin to process her claim for uninsured motorist coverage. The record demonstrates that State Farm needed to wait on a determination from Progressive in order to determine whether UM coverage would apply.

Lastly, the record clearly establishes that causation issues were legitimately studied. State Farm, attempting to work with plaintiffs and keep them informed, worked to resolve the causation issue. State Farm requested and reviewed medical records and clarification concerning medical records from May 2006 through September 2007, just before plaintiffs filed suit. From these medical records, State Farm discovered competing theories as to the cause of Faith James' compression fractures. On February 3, 2006, the day of the accident, Dr. Gatewood reported no fractures or bone injury in the spinal area and commented that loss of height in the thoracic vertebrae was "probably old." Three months later in May 2006, Dr. Staggs diagnosed plaintiff as having compression fractures in the thoracic vertebrae that seemed to be "new," caused by the February 3, 2006 accident. Five months later in October 2006, Dr. Staggs describes Faith James' thoracic vertebra fractures as old. Faith James told Powell that she had a previous lower back injury from a fall. "An insurance company

faced with two separate and distinct medical theories, each of which is supported by reputable physicians [both unassociated with the insurer], and one of which would exclude liability" is indicative that punitive damages should not be assessed. *Bankers Life and Cas. Co. v. Crenshaw*, 483 So. 2d 254 (Miss. 1985). This court easily finds a causation issue in this case.

Moreover, the delay was in part due to actions and/or inactions by plaintiffs' counsel and one of plaintiffs' doctors. *See Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 299 (5th Cir. 2009) ("An insured who fails to provide his insurer with information required to process his claim cannot then claim the insurer acted arbitrarily in delaying payment."). On multiple occasions, State Farm requested clarification from both Dr. Staggs and from plaintiffs. State Farm received medical documents from Hamilton in July 2007 after Hamilton had committed to send them in December 2006. Powell, having worked with Hamilton on claims for thirty years, waited, expecting Hamilton to send them as he usually did. State Farm requested but did not receive, at least not prior to the filing of this suit, medical records prior to the accident and clarification from Dr. Staggs, which Hamilton agreed to obtain. In March 2008, Hamilton sent State Farm Dr. Staggs' response to Hamilton's inquiry for clarification, a handwritten note addressing a July 2006 visit, a visit which neither State Farm nor Hamilton mentioned in their respective requests for clarification.

Obviously, some delay in evaluating claims is inevitable, legitimate and socially useful. *Pilate v. Am. Federated Ins. Co.*, 865 So. 2d 387, 394 (Miss. Ct. App. 2004) (citing Jeffrey Jackson, Mississippi Insurance Law § 12:5 (2001)). Insurers are entitled, and in fact legally obligated, to investigate fully the legitimacy of claims, and some

skepticism in evaluating claims is appropriate. *Id.* Since an insurer has an obligation under Mississippi law to investigate claims, discharging that duty is not bad faith. *Id.* "'[T]he denial of a claim without proper investigation may give rise to punitive damages.'" *United Am. Ins. Co. v. Merrill*, 978 So. 2d 613, 635 (Miss. 2007) (citation omitted). "Proper investigation. . . means obtaining 'all available medical information relevant to [the policyholder's] claim.'" *Id.*

The submitted evidence shows that State Farm attempted to obtain all pertinent medical information in order to resolve the legitimate question of whether all of James' injuries, claimed medical treatment, and bills were caused by the accident on February 3, 2006. State Farm made requests to determine if the accident was the cause of various injuries, such as compression fractures in James' spine; however, at the time plaintiffs filed suit, no medical opinion or report had been provided to indicate that Faith James' claimed ongoing problems and treatment were medically caused by the motor vehicle accident. The evidence does not establish, as plaintiffs argue, that causation was clear and settled prior to payment, or that State Farm engaged in intentional delay tactics.

The standard is not whether State Farm could have investigated the claim in a way that might have resulted in prompter payment of benefits; instead, the standard is whether State Farm lacked a legitimate or arguable reason for the delay and that such delay amounted to a willful or malicious wrong. The facts here do not present a genuine issue as to whether that standard was met. Considering that Faith James' claim was not denied, that the claim was eventually paid and that the record establishes that State Farm was engaged in activities in keeping with the duty imposed upon it to fully

investigate all relevant facts, this court cannot conclude that State Farm's conduct rose to the level of gross negligence or an independent, intentional tort. *See Caldwell*, 686 So. 2d at 1099.

**C. Expenses**

Plaintiffs argue that even if this court finds no bad faith they are entitled to recover the attorney's fees and other expenses incurred that were reasonable foreseeable in pursuing the amounts State Farm owed her under the four UM policies they held at the time of the accident. Plaintiffs cite *Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 270 (5th Cir. 2008) for the statement that:

> When an insurance company breaches its contract with an insured but does not do so in a way that is so egregious as to permit the recovery of punitive damages, the insured in some circumstances will have a right to attorneys' fees and other expenses that were reasonably foreseeable. *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 295 (Miss. 1992).

First, the plaintiffs have no breach of contract claim. Secondly, plaintiffs rely on the premise in *Universal Life Ins. Co. v. Veasley* that "extra-contractual damages [can] be awarded in cases involving a failure to pay on an insurance contract *without an arguable reason* even where the circumstances are not such that punitive damages are proper." 610 So. 2d 290, 295 (Miss. 1992) (emphasis added) (citation omitted). The premise behind the award plaintiffs seek does not apply when, as in the present case, a court is satisfied that an arguable reason for delay has been established. For both of these reasons, plaintiffs' request for expenses is denied.

### III. Conclusion

IT IS, THEREFORE, ORDERED AND ADJUDGED that the defendant's Motion for Summary Judgment **[Docket no. 63]** is granted, and all other motions **[Docket Nos.**

**65, 76, 82, 83, 92, 96, 99 and 101]** are moot.  The court will enter a Final Judgment in accordance with the local rules.

      **SO ORDERED, this the 6th day of May, 2011.**

                            **s/ HENRY T. WINGATE**
                            **UNITED STATES DISTRICT JUDGE**

Civil Action No. 4:07-cv-137 HTW-LRA
Memorandum Opinion and Order